1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HOWARD ALAN ZOCHLINSKI,

11              Plaintiff,                    No. CIV 2:10-cv-1824-KJM-JFM (PS)

12        vs.

13   REGENTS OF THE UNIVERSITY OF
     CALIFORNIA, et al.,                      ORDER AND
14
                Defendants.                   FINDINGS & RECOMMENDATIONS
15
     _____/
16
                       On December 9, 2010, the court held a hearing on defendants' motion to dismiss.
17
     Plaintiff appeared in pro per.  Defendants were represented by Nancy Huneke.  Upon
18
     consideration of the motions on file in this action, discussion with plaintiff and counsel, and
19
     good cause appearing therefor, THE COURT FINDS AS FOLLOWS:
20
                            FACTUAL AND PROCEDURAL BACKGROUND
21
                       Plaintiff's allegations stem from his disqualification in 1993 from a Ph.D.
22
     program at the University of California at Davis ("U.C. Davis").  (Compl. at 1-2.)  Defendant
23
     John Jones was a U.C. Davis police officer who arrested plaintiff on unrelated charges in 1972
24
     and again in 1992.  (Id. at 2.)  Defendant John Oakley is a law professor at U.C. Davis.  (Id. at
25
     1.)
26

                                                  1

1    In the complaint, which was initially filed in the Yolo County Superior Court on

2 January 22, 2010 and removed by the defendants to this court on July 14, 2010[1], plaintiff claims

3 Jones slandered him in 2001 when he told an editor of the California Aggie, U.C. Davis's

4 campus newspaper, that plaintiff was a dangerous person; this statement allegedly intimidated

5 the editor sufficiently so as to cause her to decline publication of an article written about

6 plaintiff.  (Compl. at 3-4.)

7    Plaintiff also claims that Professor Oakley slandered him to Professor Rodman,

8 the Associate Dean of Student Affairs while plaintiff was enrolled in the Ph.D. program.

9 (Compl. at 2-3.)  Plaintiff alleges that in 2000, Professor Rodman sought Oakley's advice

10 regarding plaintiff's request to be re-admitted to the Ph.D. program.  During that conversation,

11 Oakley allegedly advised Professor Rodman not to get involved with plaintiff, otherwise he

12 would be "putting [himself] and [his] family in danger."  (Id. at 3.)  Oakley then compared

13 plaintiff to Charles Manson.  (Id.)

14    The factual allegations against the Regents of the University of California ("the

15 Regents") are bare, though it appears that plaintiff's primary complaint is that the Regents are

16 persecuting plaintiff for his ongoing litigation against them and are attempting to prevent

17 plaintiff's return to U.C. Davis as a graduate student.

18    Plaintiff's claims against the Regents, Jones and Oakley are based on state law

19 claims of slander, intentional infliction of emotional distress ("IIED"), interference with right to

20 practice profession and pursue career, as well as federal claims for violations of his First, Sixth

21 and Fourteenth Amendment rights, conspiracy, and for violations of 42 U.S.C. §§ 1981-2000e.

22 /////

23

24   [1]  This is plaintiff's sixth case in the Eastern District of California against the Regents
of the University of California and other defendants.  These cases are discussed in detail in the
25 January 27, 2010 findings & recommendations issued by Magistrate Judge Edmund F. Brennan
and adopted in their entirety by the Honorable Frank C. Damrell in case No. 2:09cv0185-FCD-
26 EFB.

1    Attached to plaintiff's complaint is a declaration from Professor Rodman dated

2  January 10, 2009 ("the Rodman declaration"), in which Prof. Rodman discusses these slanders.

3    Plaintiff seeks injunctive relief and monetary damages in the amount of twenty

4  million dollars.  (Compl. at 14.)

5                                                    STANDARDS

6    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

7  sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

8  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

9  sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

10  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

11  relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct.

12  1955, 1974 (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to

13  grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

14    In determining whether a complaint states a claim on which relief may be granted,

15  the court accepts as true the allegations in the complaint and construes the allegations in the light

16  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

17  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

18    The court is permitted to consider material properly submitted as part of the

19  complaint, documents not physically attached to the complaint if their authenticity is not

20  contested and the complaint necessarily relies on them, and matters of public record.  Lee v. City

21  of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Matters of public record include

22  pleadings and other papers filed with a court.  Mack v. South Bay Beer Distributors, 798 F.2d

23  1279, 1282 (9th Cir. 1986).  The court need not accept as true conclusory allegations,

24  unreasonable inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt,

25  643 F.2d 618, 624 (9th Cir. 1981).

26  /////

1    Rule 12(e) of the Federal Rules of Civil Procedure is designed to strike at

2 unintelligibility, rather than want of detail.  See Woods v. Reno Commodities, Inc., 600 F. Supp.

3 574, 580 (D. Nev. 1984); Nelson v. Quimby Island Reclamation Dist., 491 F. Supp. 1364, 1385

4 (N.D. Cal. 1980).  The rule permits a party to move for a more definite statement "[i]f a pleading

5 is so vague that a party cannot reasonably be required to frame a responsive pleading."  Fed. R.

6 Civ. P. 12(e).  The function of such a motion is thus not to require the pleader to disclose details

7 of the case, see Boxall v. Sequoia Union High Sch. Dist., 464 F. Supp. 1104, 1114 (N.D. Cal.

8 1979), or to provide the evidentiary material that may properly be obtained by discovery, see

9 Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).  A motion

10 for more definite statement should be denied if a pleading meets federal standards by providing a

11 short and plain statement of the claim showing that the pleader is entitled to relief.  See Fed. R.

12 Civ. P. 8(a)(2).

13                                    DISCUSSION

14 A.    Defendants' Motion to Dismiss

15    Defendants seek dismissal of the complaint on the grounds that plaintiff's claims

16 are barred by the statute of limitations and plaintiff fails to state a claim.

17    1.    Statute of Limitations

18    Defendants first seek dismissal on the ground that plaintiff's numerous claims are

19 barred by the statute of limitations.  The statute of limitations in California is one year for

20 defamation.  Cal. Civ. Code § 340(c).  Unruh Act claims and claims under 42 U.S.C. § 1986 are

21 also subject to a one-year statute of limitations.  Gatto v. County of Sonoma, 98 Cal. App. 4th

22 744, 757-59 (Cal. Ct. App. 2002) (explaining that the provisions of the Unruh Act that derive

23 from the common law, including California Civil Code § 51, carry a one-year statute of

24 limitations); Cal. Civ. Code § 51; 42 U.S.C. § 1986.

25    Because section 1983 does not contain a statute of limitations, federal courts

26 apply the forum state's statute of limitations for personal injury claims.  See Wilson v. Garcia,

4

471 U.S. 261, 276 (1985).  The personal injury statute of limitations also applies to actions under 42 U.S.C. §§ 1981 and 1985.  See Taylor v. Regents of the Univ. of California, 993 F.2d 710, 711-12 (9th Cir. 1993); McDougal v. County of Imperial, 942 F.2d 668, 673-74 (9th Cir. 1991). For claims that accrued prior to January 1, 2003, the statute of limitations in California for personal injury actions was one year.  See Elliott v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994); Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1.

On January 1, 2003, California Code of Civil Procedure section 335.1[2] took effect to extend the prior limitations period for personal injury actions (and correspondingly to federal civil rights claims) from one year under former California Code of Civil Procedure section 340(3) to two years.  Abreu v. Ramirez, 284 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003); see Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, § 3.

Applying California law, claims brought under section 1983 and which arise in California are generally barred if not brought within one year if they accrued prior to January 1, 2003 and within two years if they accrued after January 1, 2003.[3]  See Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975); Elliot v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994); Krug v. Imbrodino, 896 F.2d 395, 396-97 (9th Cir. 1990); see also Taylor v. Regents of University of California, 993 F.2d 710, 711 (9th Cir. 1993), cert. denied, 510 U.S. 1076 (1994).

/////

/////

---

[2]  Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

[3]  Under California law, an extension of a statute of limitations will not apply to claims already barred under the prior statute of limitations unless the Legislature explicitly provides otherwise.  See Maldonado, 370 F.3d at 955.  There were no explicit provisions for retroactive application of the extension to the statute of limitations for personal injury actions except for causes of action stemming from the September 11 attacks.  See Cal. Civ. Proc. § 335.1.

1    Here, the alleged slanders occurred in 2000 and 2001, thus the pre-2003 one year

2 statute of limitations applies to all claims.  Plaintiff, however, did not file the present action until

3 January 22, 2010.  Thus, absent tolling, this action is untimely.

4    Plaintiff's position is that the delayed discovery rule applies because he was

5 unaware of the slanders until he received a copy of Professor Rodman's declaration wherein

6 these slanders were discussed.  Plaintiff also seeks equitable tolling due to illness.

7    Federal law "determines when a federal cause of action accrues, despite the fact

8 that state law determines the relevant statute of limitations." Wetzel v. Lou Ehlers Cadillac

9 Group, 189 F.3d 1160, 1163 (9th Cir. 1999) (quoting Williams v. UNUM Life Ins. Co. of

10 America, 113 F.3d 1108, 1111 (9th Cir. 1997)).  Under federal law, a claim accrues when the

11 plaintiff knows or has reason to know of the injury which is the basis of the action.  Tworivers v.

12 Lewis, 174 F.3d 987, 991 (9th Cir. 1999); Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996).

13 "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason

14 to know of the asserted injury." De Anza Properties X, Ltd. v. County of Santa Cruz, 936 F.2d

15 1084, 1086 (9th Cir. 1991); see also Soliman v. Philip Morris, Inc., 311 F.3d 966, 971 (9th Cir.

16 2002).

17    However, the date of accrual may toll in certain situations that are subject to the

18 delayed-discovery doctrine.  See Neel v. Magana, Olney, Levy, Cathcart & Gelfund, 6 Cal.3d

19 176, 190 (1971); Cain v. State Farm Mut. Auto. Ins. Co., 62 Cal. App. 3d 310, 314-15 (1976).

20 Under the "delayed-discovery doctrine" or "discovery rule," the limitations period begins to run

21 once a plaintiff "has knowledge of the 'critical facts' of his injury, which are 'that he has been

22 hurt and who has inflicted the injury.'" Bibeau v. Pacific Northwest Research Foundation, 188

23 F.3d 1105, 1108 (9th Cir. 1999) (quoting United States v. Kubrick, 444 U.S. 111, 122 (1979)).

24 Under this rule, a plaintiff "must be diligent in discovering the critical facts," or his claim will be

25 barred if he "should have known in the exercise of due diligence." Bibeau, 188 F.3d at 1108.

26 /////

1        Plaintiff asserts that he was not aware of either Jones or Oakley's statements

2   until January 24, 2009, when he received in hand a copy of Professor Rodman's declarations.

3   (Opp'n at 5-6.)  As to Jones, plaintiff admits that in 2005 he became aware that Jones "had

4   intimidated the editor to such an extent that not only did the editor refuse to run that article ... but

5   refused to employ [the reporter] again."  (Compl. at 4.)  At the time, though, plaintiff thought

6   Jones's "weight, height and police status" were the sources of intimidation, not any statements

7   made by Jones.  (Opp'n at 9.)

8        Examination of the facts of this case convinces the court that the delayed-

9   discovery doctrine should not be applied to plaintiff's claims.  The following factors were relied

10  on in making this determination: (1) Professor Rodman's declaration is dated January 10, 2009,

11  more than one year before January 22, 2010, the date on which plaintiff filed the present lawsuit;

12  (2) plaintiff's complaint both attaches to it and references within it statements made by Professor

13  Rodman in his declaration.  It is unclear to the court how plaintiff's complaint, which refers to

14  and attaches to it the Rodman declaration, could have been filed two days prior to the date

15  plaintiff claims he received, and thus was aware of, the Rodman declaration; (3) plaintiff's

16  contention that he received notice when he received a copy of Professor Rodman's declaration in

17  hand is unsupported by the law; (4) the Rodman declaration is printed on a document with a

18  footer that reads "Declaration of Peter Rodman – 2008"; (5) this declaration is prepared as a

19  filing with plaintiff's name on it; (6) the declaration is titled "Declaration of Peter Rodman,

20  Ph.D. in Support of Petitioners' Writs"; (7) the declaration repeatedly references statements

21  made in a writ and a request for judicial notice (see, e.g., Rodman Decl., ¶¶ 5, 9, 12); (8)

22  plaintiff's writs were filed in state court in case No. PT-07-009 in 2008 (see case No. 09cv185-

23  FCD-DFB, Docket No. 13, Ex. C; Docket No. 23 at 2); and (9) it is simply unbelievable that

24  Professor Rodman would prepare his declaration absent plaintiff's knowledge of its contents.

25  Instead, the court finds that Professor Rodman wrote this declaration at plaintiff's request and for

26  litigation purposes.  In fact, Professor Rodman's declaration concludes with "I make the

1    foregoing statements from personal knowledge ... and if called as a witness in this case, I could

2    testify thereto."  (Rodman Decl. at 20.)

3              Plaintiff alternatively argues that the doctrine of equitable tolling should apply.

4    Specifically, plaintiff asserts that he was ill from November 2009 and January 24, 2009, and that

5    this illness prevented plaintiff from receiving Professor Rodman's declaration.  In California,

6    tolling sometimes may apply where "circumstances effectively render timely commencement of

7    an action impossible or virtually impossible."  See Grell v. Laci Le Beau Corp., 73 Cal. App. 4th

8    1300, 1305 (1999) (citations omitted); see also Lewis v. Superior Court, 175 Cal. App. 3d 366

9    (1985) (statute tolled when plaintiff's attorney, a sole practitioner, had calendared last date to file

10   but was seriously injured in an automobile accident four days before the statute ran).  The

11   equitable tolling doctrine applies "occasionally and in special situations" and requires that the

12   plaintiff have diligently pursued his or her claim.  Addison v. State of California, 21 Cal.3d at p.

13   316; Hull, 28 Cal.App.4th at p. 1336.  Here and for the reasons set forth above, the court is

14   unconvinced that Professor Rodman wrote the declaration without plaintiff's knowledge of its

15   contents.  Even assuming that plaintiff was ill from November 2008 to January 24, 2009, the

16   court remains convinced that plaintiff was aware of the contents of the Rodman declaration prior

17   to his receipt of it.  Thus, equitable tolling should not apply.

18             Based on these facts, the court finds that plaintiff's claims accrued at the latest on

19   January 10, 2009.  Accordingly, those claims that are definitively barred by the one-year statute

20   of limitations – that is, plaintiff's defamation, Unruh Act and section 1986 claims – should be

21   dismissed with prejudice.

22             2.    Remaining Federal Claims

23             The court will proceed with the remaining claims assuming, without deciding,

24   that California Code of Civil Procedure section 335.1's two year statute of limitations applies.

25   Upon review, the court finds that plaintiff's remaining federal claims for violations of his First

26   /////

1  and Fourteenth Amendment rights, as well as violations of 42 U.S.C. §§ 1981-1983, 1985 and

2  2000a-2000e, likewise fail and should be dismissed.

3             a.       Claims Against the Regents

4             Examination of the complaint reveals that all claims against the Regents should

5  be dismissed with prejudice.  The Eleventh Amendment bars from federal courts suits against a

6  state by its own citizens, citizens of another state, or citizens or subjects of any foreign state.

7  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 237-38 (1985). This immunity also extends to

8  suits against state agencies, including the Regents of the University of California. Armstrong v.

9  Meyers, 964 F.2d 948, 949-50 (9th Cir. 1992).

10             Under controlling case law, however, a state waives Eleventh Amendment

11  immunity if it engages in certain affirmative "conduct that is incompatible with an intent to

12  preserve that immunity."  Hill v. Blind Indus. & Services, 179 F.3d 754, 758 (9th Cir. 1999).

13  Under certain circumstances, a court may find that removal of state-or federal-law claims is

14  conduct that constitutes waiver.  Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613,

15  619 (2002); Embury v. King, 361 F.3d 562, 566 (9th Cir. 2004).

16             Notwithstanding the Regents' waiver of its Eleventh Amendment immunity,

17  plaintiff cannot sue the Regents under Section 1983, either in federal court or in state court,

18  because it is not a "person" within the meaning of Section 1983.  Will v. Michigan Dep't of State

19  Police, 491 U.S. 58, 64 (1989) (a state is not a "person" under Section 1983); see Maldonado v.

20  Harris, 370 F.3d 954, 951 (9th Cir. 2004) ("[s]tate agencies ... are not 'persons' within the

21  meaning of § 1983, and are therefore not amenable to suit under that statute").  As a result,

22  plaintiff cannot pursue claims for damages against the Regents under Section 1983 in any forum.

23  Therefore, this claim should be dismissed with prejudice.

24             The Regents similarly is not a "person" for purposes of suit under Section 1985.

25  See Austin v. State Indus. Ins. System, 939 F.2d 676, 678 (9th Cir. 1991) (citing with approval

26  state court's finding that state agency was not a "person" within the meaning of Section 1985);

1 | Carmen v. San Francisco Unified School Dist., 982 F. Supp. 1396, 1404 (N.D. Cal.1997)

2 | ("courts have held that the term 'person,' as used in section 1985, has the same meaning as

3 | 'person, as used in section 1983'").  Section 1981 also does not create a cause of action against a

4 | state or a state agency.  Pittman v. Oregon, Employment Dep't, 509 F.3d 1065, 1074 (9th Cir.

5 | 2007) ("we hold that § 1981 does not contain a cause of action against states").  Plaintiff's claim

6 | under section 1982 is simply inapplicable to this case.

7 |         Lastly, insofar as plaintiff is suing the Regents for violations of 42 U.S.C. § 2000a

8 | et seq., he fails to state a claim.  These sections are intended to prohibit discrimination and/or

9 | segregation in places of public accommodation, 42 U.S.C. § 2000a et seq.; public facilities, 42

10 | U.S.C. § 2000b et seq.; public education, 42 U.S.C. § 2000c et seq.; federally assisted programs,

11 | 42 U.S.C. § 2000d et seq.; and in the workforce, 42 U.S.C. § 2000e et seq.  Plaintiff's claims are

12 | premised on the theory that the actions complained of were based on racial animus (plaintiff is

13 | Jewish) and for the purpose of depriving plaintiff of his equal protection rights.  Again, other

14 | than conclusory allegations, plaintiff provides no support for these claims.  Therefore, these

15 | claims should be dismissed with prejudice.

16 |         b.     Claims Against Individual Defendants

17 |             i.     Official Capacity

18 |         To the extent plaintiff is suing Oakley and Jones in their official capacities, it is

19 | noted that in an official-capacity action, a governmental entity is liable under § 1983 only when

20 | the entity itself is a "'moving force'" behind the deprivation.  Polk County v. Dodson, 454 U.S.

21 | 312, 326 (1981) (quoting Monell, 436 U.S. at 694).  Thus, in an official-capacity suit the entity's

22 | "policy or custom" must have played a part in the violation of federal law. Oklahoma City v.

23 | Tuttle, 471 U.S. 808, 817-18 (1985); Monell, 436 U.S., at 694 ("[A] local government may not

24 | be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when

25 | execution of a government's policy or custom, whether made by its lawmakers or by those whose

26 | edicts or acts may fairly be said to represent official policy, inflicts the injury that the

1   government as an entity is responsible under § 1983").  Here, plaintiff alleges the Regents have a

2   policy of defaming plaintiff so as to prevent his readmission into the Ph.D. program.  These are

3   conclusory allegations without factual support.  Thus, these claims should be dismissed.

4                              ii.        42 U.S.C. §§ 1981, 1982

5              Plaintiff alleges defendants have engaged in actions that are "clear violations" of

6   42 U.S.C. §§ 1981 and 1982.  (Compl. at 10.)  Under section 1981, "All persons within the

7   jurisdiction of the United States shall have the same right in every State and Territory to make

8   and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all

9   laws and proceedings for the security of persons and property as is enjoyed by white citizens,

10  and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every

11  kind, and to no other."  Additionally, under section 1982, "[a]ll citizens of the United States shall

12  have the same right, in every State and Territory, as is enjoyed by white citizens thereof to

13  inherit, purchase, lease, sell, hold, and convey real and personal property."  These statutes are

14  simply inapplicable to this case and/or are unsupported by facts.  Therefore, claims brought

15  pursuant to 42 U.S.C. §§ 1981 and 1982 should be dismissed with prejudice.

16                              iii.       Conspiracy pursuant to 42 U.S.C. § 1983

17             A conspiracy claim brought under section 1983 requires proof of "'an agreement

18  or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th

19  Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-

20  41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v.

21  Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,

22  866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not

23  know the exact details of the plan, but each participant must at least share the common objective

24  of the conspiracy.'" Franklin, 312 F.3 d at 441 (quoting United Steel Workers, 865 F.2d at

25  1541).

26             Plaintiff attempts to tie together the defendants' alleged acts by merely stating

1   that a conspiracy exists.  Plaintiff, however, has not presented sufficient facts to support his

2   allegations of a conspiracy or even that Oakley and Jones knew each other.  The court need not

3   accept legal conclusions "cast in the form of factual allegations."  W. Mining Council v. Watt,

4   643 F.2d 618, 624 (9th Cir. 1981).  Even viewing plaintiff's allegations in the light most

5   favorable to plaintiff, the complaint fails to state a claim for relief that is plausible on its face.

6   Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

7   Thus, this claim should be dismissed.

8              iv.    Defamation pursuant to 42 U.S.C. § 1983 ("Defamation +")

9              In order to allege a defamation claim pursuant to section 1983, plaintiff must

10  allege injury to his reputation from defamation *accompanied by* an allegation of injury to a

11  recognizable property or liberty interest to have an actionable claim under 42 U.S.C. § 1983.

12  Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991) (italics added).  This is called

13  "defamation-plus."  Id.  Harm to reputation alone is not actionable.  WMX Techs. v. Miller, 80

14  F.3d 1315, 1320 (9th Cir. 1996).

15             The Ninth Circuit has clarified that: "There are two ways to state a cognizable

16  § 1983 claim for defamation-plus: (1) allege that the injury to reputation was inflicted in

17  connection with a federally protected right; or (2) allege that the injury to reputation caused the

18  denial of a federally protected right."  Herb Hallman Chevrolet v. Nash-Holmes, 169 F.3d 636,

19  645 (9th Cir. 1999) (citing Cooper, 924 F.2d at 1532).  There must also be some temporal

20  connection between the unconstitutional actions and the defamatory statements.  Campanelli v.

21  Bockrath, 100 F.3d 1476, 1483 (9th Cir.1996).

22             Plaintiff claims that as a result of the defendants' statements, he was denied his

23  First Amendment rights to academic freedom.  There is no merit to this claim.  The Supreme

24  Court has defined "academic freedom" to mean "wide exposure to that robust exchange of ideas

25  which discovers truth 'out of a multitude of tongues, (rather) than through any kind of

26  authoritative selection."  Keyishian v. Board of Regents of University of State of N.Y., 385 U.S.

589 (1967) ("[Academic] freedom is ... a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom").  Academic freedom does not mean readmission to an academic program.

Plaintiff also argues that he was denied due process and equal treatment, as well as his right to a fair trial.  Essentially, plaintiff contends that Professor Oakley made the statements to Professor Rodman so as to undermine plaintiff's attempt to seek redress within the U.C. system concerning his dismissal from the Ph.D. program.  This claim is also without merit, particularly in light of the fact that in 2005 plaintiff received a hearing wherein the faculty voted in favor of reinstatement.  (See Rodman Decl., ¶ 51.)

v.      42 U.S.C. §§ 2000a-2000e

As previously discussed, claims brought pursuant to 42 U.S.C. §§ 2000a-2000e are untenable.  As such, they should be dismissed with prejudice.

3.      Remaining State Claims

When the defendants removed this action to federal court, the court acquired supplemental jurisdiction over the state law claims.  See Carlsbad Technology, Inc. v. HIF Bio., Inc., --- U.S. ----, 129 S.Ct. 1862, 1867 (2009).

Upon review, the undersigned finds that plaintiff's remaining state claims should also be dismissed with prejudice.  Plaintiff sues defendants for IIED, which is generally deemed subject to the personal injury statute of limitations of two years.  Cal. Code Civ. P. § 335.1.  This claim, however, is predicated on plaintiff's defamation claim, which, as discussed supra, is barred by a one year statute of limitations.  Thus, the IIED is also barred by the statute of limitations.  Holding otherwise – that is, allowing a defamation claim to be brought in the guise of an IIED claim – would divorce it from the well developed law of defamation with its attendant privileges and defenses.  "Where the complaint is based on an offensive statement that is defamatory, plaintiffs have not been allowed to circumvent the statutory limitation by proceeding on a theory other than defamation."  Fellows v. National Enquirer, Inc., 42 Cal.3d

234, 240 (1986); see also Grimes v. Carter, 241 Cal. App. 2d 694, 702 (Cal. Ct. App. 1966) ("In circumstances where a plaintiff states a case of libel or slander, [emotional] distress is a matter which may be taken into account in determining the amount of damages to which the plaintiff is entitled, but it does not give rise to an independent cause of action on the theory of a separate tort."). For similar reasons, plaintiff's claim for interference with right to practice profession and tp pursue career likewise fails.

B.      Miscellaneous Motions

        1.      Intervention of Attorney General

                Plaintiff requests that the Attorney General be required to intervene pursuant to 42 U.S.C. § 2000a-3(a). Because there is no basis for this request, this request should be denied.

        2.      Request to Amend

                Plaintiff seeks leave to amend. A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987). Nevertheless, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000). Where further amendment would be futile, the court may exercise its discretion and deny leave to amend. Lopez, 203 F.3d at 1129. The trial court's discretion to refuse leave to amend is particularly broad when the court has previously granted leave to amend. Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999).

                The undersigned notes the fact that despite a nearly seventeen year history of pursuing claims against the Regents and other defendants[4] and many attempts by the courts to

_____

        [4] Four of plaintiff's six complaints in this court have been dismissed for failure to state a claim, and one is stayed pending resolution of a state mandamus action, see 08-cv-0024-LEW-KJM.

1    guide plaintiff in presenting his claims in "simple, concise, and direct averments," <u>see</u>, <u>e.g.</u>, Doc.

2    No. 28 in case no. 08-cv-0024-LEW-KJM, plaintiff's instant complaint is indirect and, at times,

3    unintelligible.  Following his state law claims of defamation and IIED, plaintiff's numerous

4    federal claims are addressed under a single heading that reads "Civil rights violations under the

5    U.S. and California constitutions and federal and state laws [including 42 U.S.C. §§ 1981-2000

6    (Federal) and the Unruh and Tom Banes Civil Rights Acts (California)]."  (Compl. at 7.)  Under

7    this heading, plaintiff makes several conclusory allegations and, in effect, requires the court to

8    identify facts that may be applicable to his claims.  Although the Federal Rules adopt a flexible

9    pleading policy, a complaint must give fair notice and state the elements of the claim plainly and

10   succinctly.  <u>Jones v. Community Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).  The instant

11   complaint does neither.

12            Thus, taking into consideration plaintiff's litigation history and for the reasons

13   already discussed, the undersigned finds that the complaint either completely lacks merit and/or

14   is barred by the statute of limitations.  Accordingly, leave to amend should be denied.

15            3.    <u>Motion to Appoint Counsel</u>

16            Plaintiff has filed a motion for appointment of counsel.  There is no constitutional

17   right to counsel in a civil case.  <u>Lassiter v. Dep't of Social Services</u>, 452 U.S. 18, 25 (1981).  28

18   U.S.C. § 1915 confers on a district court only the power to "request" that counsel represent a

19   litigant who is proceeding in forma pauperis.  28 U.S.C. § 1915(e)(1).  This does not give the

20   courts the power to make "coercive appointments of counsel."  <u>Mallard v. United States Dist.</u>

21   <u>Court</u>, 490 U.S. 296, 310 (1989).  Here, plaintiff is not proceeding in forma pauperis and there is

22   no other basis upon which to appoint counsel.  As a result, plaintiff's motion for appointment of

23   counsel is denied.

24            4.    <u>Motion to Remand or Motion to Sever</u>

25            Plaintiff filed a motion to remand or, in the alternative, motion to sever the state

26   law causes of action.  Under 28 U.S.C. section 1441(a), "any civil action brought in a State court

15

of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States ...." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. section 1367, "in a civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Federal courts have broad authorization under 28 U.S.C. section 1367 to assert supplemental jurisdiction over state law claims when the state and federal claims derive from a "common nucleus of operative fact," the claims are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding," and the federal issues are substantial. Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California, 24 F.3d 1545, 1552 (9th Cir. 1994). However, "[i]t has consistently been recognized that [supplemental] jurisdiction is a doctrine of discretion." Id. at 1556.

Under section 1367(c), a court can decline to assert supplemental jurisdiction over a pendant claim if one of the following four categories applies:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c); Executive Software, 24 F.3d at 1557. In making its determination, the court should be guided by considerations of "judicial economy, convenience, fairness and comity." Id. If the exercise of supplemental jurisdiction does not advance these considerations, "a federal court should hesitate to exercise jurisdiction over state law claims." Id.

1    For the reasons set forth above, plaintiff's state law claims are barred by the

2 statute of limitations.  Thus, remand to state court would be futile and this motion should be

3 denied.

4    Accordingly, IT IS HEREBY ORDERED that:

5    1.  Plaintiff's motion to file late brief is granted;

6    2.  Plaintiff's motion for appointment of counsel is denied;

7    3.  Plaintiff's motion for extension of time is granted; and

8    IT IS HEREBY RECOMMENDED that:

9    1.  Plaintiff's motion to remand to state court be denied;

10    2.  Defendants' motion to dismiss be granted;

11    3.  Leave to amend be denied;

12    4.  This action be dismissed with prejudice.

13    These findings and recommendations are submitted to the United States District

14 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

15 days after being served with these findings and recommendations, any party may file written

16 objections with the court and serve a copy on all parties.  Such a document should be captioned

17 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

18 objections shall be filed and served within fourteen days after service of the objections.   The

19 parties are advised that failure to file objections within the specified time may waive the right to

20 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21 DATED: February 9, 2011.

22

23

UNITED STATES MAGISTRATE JUDGE

24

25 /014;zuch1824.mtd2.v2

26