1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HOWARD ALAN ZOCHLINSKI,                    No. 2:10-cv-1824-KJM-KJN PS

12                Plaintiffs,

13          v.                                  ORDER AND

14   REGENTS OF THE UNIVERSITY OF               FINDINGS AND RECOMMENDATIONS
     CALIFORNIA, et al.,
15
                 Defendants.
16

17          Presently before the court is defendants' motion to dismiss plaintiff's first amended

18   complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (ECF No. 73.)  Plaintiff filed an

19   opposition and defendants filed a reply.  (ECF Nos. 80, 81.)  The court heard this matter on its

20   October 29, 2015 law and motion calendar.  Plaintiff appeared on his own behalf.  Attorney

21   Meaghan A. Snyder appeared on behalf of defendants.  The undersigned has fully considered the

22   parties' briefs, the parties' oral arguments, and appropriate portions of the record.  For the reasons

23   that follow, it is recommended that defendants' motions to dismiss be granted and this action be

24   dismissed with prejudice.

25   ////

26

27   _____
     [1] This action proceeds before the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  This action was referred to the undersigned "for new
28   proceedings in light of the Ninth Circuit's opinion."  (ECF No. 65.)

                                                   1

1    I.        Procedural Background

2             Plaintiff commenced this action on January 22, 2010, in the Yolo County Superior Court.

3    (ECF No. 1-1.)  Defendants subsequently removed the case to this court on the basis of this

4    court's federal question jurisdiction.  (ECF No. 1.)  Defendants then filed a motion to dismiss the

5    complaint with prejudice (ECF No. 6), which was granted on August 11, 2011.  (ECF No. 45.)

6    Judgment was entered for defendants on that same day (ECF No. 46), which plaintiff then

7    appealed to the Ninth Circuit Court of Appeals.  (ECF No. 51.)

8             On June 10, 2014, the Ninth Circuit Court of Appeals issued a memorandum opinion that

9    affirmed in part and reversed in part the August 11, 2011 order and judgment (ECF Nos. 45, 46)

10   granting defendants' motion to dismiss and dismissing plaintiff's original complaint with

11   prejudice.  (ECF No. 62.)[2]  In particular, the opinion affirmed the dismissal of plaintiff's claims in

12   his original complaint under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 against the Regents

13   of the University of California, and his damages claims under those provisions against John

14   Oakley and John Jones, Jr. in their official capacities.  (Id. at 2.)  The opinion further affirmed the

15   dismissal of plaintiff's conspiracy claims under 42 U.S.C. §§ 1982 and 1983, and claims under

16   Title II, IV, VI, and VII of the Civil Rights Act against all defendants.  (Id.)  However, the

17   opinion reversed and remanded the dismissal of plaintiff's equal protection claim under 42 U.S.C.

18   § 1981 against John Jones, Jr. and defamation plus claims under 42 U.S.C. § 1983 against John

19   Oakley and John Jones, Jr. to the extent that these claims were asserted against these defendants

20   in their individual capacities.  (Id. at 3.)  The opinion also reversed and remanded the dismissal of

21   plaintiff's state law claims for defamation, intentional infliction of emotional distress, and

22   violations of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq., against all defendants.  (Id.

23   at 4.)  The Ninth Circuit Court of Appeals remanded this action to this court for further

24   proceedings in accordance with its opinion.  (Id. at 5.)

25   ////

26

27   _____
     [2] The June 10, 2014 mandate took effect on October 7, 2014 when it became the formal mandate
     of the Ninth Circuit Court of Appeals pursuant to Federal Rule of Appellate Procedure 41(a).
28   (ECF No. 64.)

1    In light of this mandate, the court vacated the judgment dated August 11, 2011 (ECF No.

2  46) insofar as it concerned plaintiff's following claims:  (1) equal protection claim under 42

3  U.S.C. § 1981 against John Jones, Jr.; (2) defamation-plus claims under 42 U.S.C. § 1983 against

4  John Oakley and John Jones, Jr. to the extent that these claims are asserted against these

5  defendants in their individual capacities; (3) state law defamation; (4) intentional infliction of

6  emotional distress; and (5) violations of California's Unruh Civil Rights Act.  The court further

7  directed plaintiff to file either an amended complaint asserting the claims for which judgment had

8  been vacated or a statement that he desired to proceed on his original complaint as modified by

9  the Ninth Circuit Court of Appeals' opinion.  (ECF No. 66.)  Plaintiff subsequently filed the

10  operative first amended complaint.   (ECF No. 72.)  Defendants then filed their motion to dismiss

11  that is presently before the court.  (ECF No. 73.)

12  II.    Factual Allegations of the First Amended Complaint

13    Plaintiff's allegations in the first amended complaint generally stem from his

14  disqualification in 1993 from a Ph.D. program at the University of California at Davis ("U.C.

15  Davis") and defendants' alleged actions in connection with his pursuit to be reinstated in that

16  program.  (ECF No. 72 at 2-6.)  Defendant John Jones, Jr. ("Jones") was a U.C. Davis police

17  officer who arrested plaintiff in 1972 and again in 1992 on unspecified charges, which were

18  dismissed after both arrests.  (Id. at 2.)  Defendant John Oakley ("Oakley") is a law professor at

19  U.C. Davis.[3]  (Id.)

20  ////

21  ////

22  ////

23

24  _____

[3] Plaintiff also names a number of "Doe" defendants in his first amended complaint, who he
claims include the individual Regents of the University of California.  (ECF No. 72 at 3.)

25  Plaintiff also appears to allege claims against the Regents of the University of California as an
institutional body, but fails to include this defendant in the party caption of the first amended

26  complaint despite having previously named it as a defendant in the original complaint and having

27  been granted leave to assert claims against it in his first amended complaint.  (Compare ECF No.
1-1 with ECF No. 72.)  The court addresses plaintiff's allegations and claims regarding these

28  defendants in more detail below.

1    Plaintiff alleges that in the spring of 2000, he approached Peter Rodman, Ph.D.

2    ("Professor Rodman"), a professor of anthropology at U.C. Davis, to request Professor Rodman's

3    assistance in his efforts to be reinstated in the Ph.D. program from which he had been

4    disqualified.  (Id. at 4.)  Before agreeing to provide plaintiff with the requested assistance,

5    Professor Rodman began to investigate plaintiff's case by contacting several individuals within

6    the U.C. Davis community, including defendant Oakley.  (Id. at 5.)  On January 10, 2009,

7    Professor Rodman signed a declaration in connection with a previous lawsuit filed by plaintiff

8    that, in part, detailed Professor Rodman's investigation efforts and findings regarding plaintiff's

9    request for assistance.  (Id. at 22-41.)  Plaintiff attaches this declaration to his first amended

10   complaint and directly references and quotes from it throughout his allegations with regard to

11   Professor Rodman's statements concerning Jones and Oakley.

12        Specifically, plaintiff alleges that Oakley slandered plaintiff when he made statements to

13   Professor Rodman in 2000 (id. at 6), the alleged details of which plaintiff quotes directly from

14   Professor Rodman's attached declaration:

15        I wanted [Oakley's] advice because I knew he had been defending a convicted
16        criminal on "death row" at the Vacaville State Prison, and I thought he would have
          a good sense for the merits of standing up for a man who is possibly accused.  I
17        also felt he would have some sense for the credibility of Mr. Zochlinski's alleged
          history and could advise me on whether to pursue supporting him or not.  When I
18        gave him Mr. Zochlinski's name, without even discussing the case, Mr. Oakley
          told me that Mr. Zochlinski had come to his office many years before to ask for his
19        advice and assistance in his case against the University.  He continued to advise
20        me not to become involved with Mr. Zochlinski.  In his words, I could be ". . .
          putting myself and my family in danger . . ." by doing so.  He went on to equate
21        his impression of Mr. Zochlinski with his impression of Charles Manson, the
          convicted psychopath housed at Vacaville prison where his death row client is
22        housed.

23

24   (Id. at 28.)  The first amended complaint continues to quote Professor Rodman's declaration as

25   follows:

26        I have no doubt Mr. Oakley was sincerely concerned for my safety and thought he
27        was giving me a reasonable admonition.  His was the most extreme version of his
          reaction to Mr. Zochlinski, and he was the most extremely wrong in his
28        description.  It is chilling to think that first impressions that are so wrong and

                                              4

1    irrational like t[hat] of . . . Professor Oakley could have affected Mr. Zochlinski's
2    life so consistently.

3    (Id.)  Plaintiff alleges that Oakley's statements about him "were heard by Prof. Rodman and other
4    persons unknown to Zochlinski."  (Id. at 6.)  He further alleges that he believes that Oakley made
5    similar statements to unspecified members of the U.C. Davis academic council, senate, and
6    administration.  (Id.)  Plaintiff also alleges that Oakley's slanders were "based on racial animus
7    [anti-Semitism], personal bias and retaliation for past complaints of anti-Semitism against his
8    employer, the Regents of [the] University of California."  (Id. at 14.)

9         Plaintiff also alleges that he "believes" that "Oakley, in June 2006, acted through fraud
10   and oppression to secure passage of [the] University-wide Committee on Rules & Jurisdiction . . .
11   Legislative Ruling 6.06," which was interpreted by U.C. Davis administrators to deny plaintiff's
12   reinstatement into the Ph.D. program from which he had been disqualified.  (Id. at 12-13.)
13   Plaintiff alleges that Oakley was able to secure passage of Ruling 6.06 through his position as
14   chair of the academic senate.  (Id. at 13.)

15        With regard to defendant Jones, plaintiff alleges that Professor Rodman had spoken to
16   Teresa Lee, a journalist at the U.C. Davis campus newspaper the *California Aggie*, who told
17   Rodman that Jones had approached the editor of the newspaper in 2001 and intimidated him with
18   a slanderous "description of [plaintiff] as a dangerous man," which caused the editor to decide to
19   not publish a story on plaintiff that Ms. Lee had been writing.  (Id. at 6.)  Professor Rodman's
20   attached declaration also provides the following regarding this alleged incident:

21        Teresa Lee was a journalist for the *California Aggie*, the UCD student newspaper,
22   at the time she was writing about Mr. Zochlinski in 2001.  The article on Mr.
     Zochlinski was to appear in the Aggie.  According to Ms. Lee, before the article
23   was to appear, Officer Jones went to see the editor.  According to Ms. Lee, the
     editor was intimidated by Jones's description of Mr. Zochlinski as a dangerous
24   man and decided not to run the story.  Again according to Ms. Lee, after a
     complaint about Jones's actions, the police concluded that he did nothing wrong
25   other than using his own keys to enter the paper's offices instead of making an
     appointment before hand [sic] or knocking and being invited to enter.  By Ms.
26   Lee's report, after the Aggie refused to run the story on Mr. Zochlinski, Lee was
     no longer employed by the paper because the editor refused to accept any articles
27   from her.  Her article was eventually printed in the *Sacramento News and Review*.

28

5

1   (ECF No. 72 at 31.)  Plaintiff further alleges that "Jones also had claimed, falsely, that Zochlinski

2   had been convicted of charges made against him in 1972, thus imputing Zochlinski had been

3   convicted of serious charges, including felonies, in the past when no such convictions had

4   occurred."  (Id. at 6.)  Plaintiff alleges that Jones made his statements "in order to prevent

5   publication of an article in a UC campus newspaper that would embarrass both Jones and his

6   employer, the Regents of the University of California."  (Id. at 9.)

7        Plaintiff alleges that he first became aware of the alleged slanders spoken by Oakley and

8   Jones on January 24, 2009, after reading Professor Rodman's declaration dated January 10, 2009.

9   (Id. at 4.)

10        Based on the above factual allegations, the first amended complaint asserts the following

11   claims:  (1) state law defamation against Jones and Oakley; (2) federal "civil rights violations"

12   under 42 U.S.C. §§ 1981 and 1983 against all defendants; (3) intentional infliction of emotional

13   distress ("IIED") against Jones and Oakley; (4) state "civil rights violations" under California's

14   Unruh, Ralph, and Tom Banes Civil Rights Acts against all defendants; and (5) conspiracy claims

15   under 42 U.S.C. §§ 2000, et seq. against all defendants.

16   III.   Defendants' Motion to Dismiss

17        A.   Legal Standards

18        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

19   challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

20   Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

21   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

22   plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

23   also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

24   a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

25   is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

26   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

27   factual content that allows the court to draw the reasonable inference that the defendant is liable

28   for the misconduct alleged."  Id.

1    In considering a motion to dismiss for failure to state a claim, the court accepts all of the

2    facts alleged in the complaint as true and construes them in the light most favorable to the

3    plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

4    however, required to accept as true conclusory allegations that are contradicted by documents

5    referred to in the complaint, and [the court does] not necessarily assume the truth of legal

6    conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

7    1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

8    prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity

9    to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

10   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

11   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

12   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

13   & n.7 (9th Cir. 2010) (stating that courts continue to construe *pro se* filings liberally even when

14   evaluating them under the standard announced in Iqbal).

15   In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

16   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

17   matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

18   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

19   consider a memorandum in opposition to a defendant's motion to dismiss to determine the

20   propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,

21   1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding

22   whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.

23   2003).

24      B.    *Discussion*

25          1.    Statutes of Limitations on Plaintiff's Claims

26   In his first amended complaint, plaintiff alleges conduct by defendants reaching back to as

27   early as 1972 and as recently as 2006.  As an initial matter, defendants argue that an action based

28   on the vast majority of the conduct alleged against them in the first amended complaint is barred

by the limitations periods that correspond to each of plaintiff's claims.  Specifically, defendants argue that all conduct alleged in the first amended complaint except for the statements alleged to have been made by Jones and Oakley in 2000 and 2001, that plaintiff alleges to have first discovered on January 24, 2009 after reading Professor Rodman's January 10, 2009 declaration, fall outside the applicable limitations periods for plaintiff's claims.  The court agrees.

The statute of limitations for defamation under California law is one year. Cal. Civ. Code § 340(c).  Similarly, there is also a one-year limitations period on claims under California's Unruh Civil Rights Act.  Gatto v. County of Sonoma, 98 Cal. App. 4th 744, 757-59 (Ct. App. 2002) (holding that provisions of the Unruh Civil Rights Act that derive from the common law, including California Civil Code § 51, carry a one-year statute of limitations); Mitchell v. Sung, 816 F. Supp. 597, 602 (N.D. Cal. 1993) (applying one year statute of limitations to plaintiff's claim under California Civil Code § 51).

Because 42 U.S.C. §§ 1981 and 1983 do not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims.  See Wilson v. Garcia, 471 U.S. 261, 275, 280 (1985) (holding that the relevant state statute of limitations for personal injury claims applies to claims brought under § 1983);  Gray v. Vons Companies, Inc., 70 F.3d 1278 (9th Cir. 1995) ("California's one-year statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. § 1981.");  Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 119 (9th Cir. 1980) (citing Johnson v. Railway Express Agency, 421 U.S. 454, 462 (1975)) ("Since § 1981 does not have its own limitation period, federal courts apply the most appropriate state statute of limitations.").  For claims that accrued prior to January 1, 2003, the statute of limitations in California for personal injury actions was one year.  See Elliott v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994); Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1.  However, on January 1, 2003, California Code of Civil Procedure section 335.1[4] took effect to "extend[ ] the prior limitations period applicable to personal injury actions (and correspondingly to federal civil rights claims) . . . from one year

---

[4] Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

8

1    under [former California Code of Civil Procedure] § 340(3) to two years." <u>Abreu v. Ramirez</u>,

2    284 F. Supp. 2d 1250, 1255 (C.D. Cal. 2003). Accordingly, claims brought under section 1981 or

3    1983 and which arise in California are generally barred if not brought within one year if they

4    accrued prior to January 1, 2003, and within two years if they accrued after January 1, 2003.[5] <u>See</u>

5    <u>Johnson v. Railway Express Agency, Inc.</u>, 421 U.S. 454 (1975); <u>Elliot v. City of Union City</u>, 25

6    F.3d 800, 802 (9th Cir. 1994); <u>Krug v. Imbrodino</u>, 896 F.2d 395, 396-97 (9th Cir. 1990); <u>Taylor</u>

7    <u>v. Regents of University of California</u>, 993 F.2d 710, 711 (9th Cir. 1993), <u>cert. denied</u>, 510 U.S.

8    1076 (1994).

9        Federal law "determines when a federal cause of action accrues, despite the fact that state

10    law determines the relevant statute of limitations." <u>Wetzel v. Lou Ehlers Cadillac Group</u>, 189

11    F.3d 1160, 1163 (9th Cir. 1999) (quoting <u>Williams v. UNUM Life Ins. Co. of America</u>, 113 F.3d

12    1108, 1111 (9th Cir. 1997)). Under federal law, a claim accrues when the plaintiff knows or has

13    reason to know of the injury which is the basis of the action. <u>Tworivers v. Lewis</u>, 174 F.3d 987,

14    991 (9th Cir. 1999); <u>Kimes v. Stone</u>, 84 F.3d 1121, 1128 (9th Cir. 1996). "Generally, the statute

15    of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted

16    injury." <u>De Anza Properties X, Ltd. v. County of Santa Cruz</u>, 936 F.2d 1084, 1086 (9th Cir.

17    1991); <u>see also</u> <u>Soliman v. Philip Morris, Inc.</u>, 311 F.3d 966, 971 (9th Cir. 2002).

18        After reviewing the allegations of the first amended complaint, the court concludes that

19    the only conduct plaintiff alleges against defendants Jones and Oakley that falls within any of the

20    applicable limitations periods for his claims are the allegedly slanderous comments these

21    defendants made in 2000 and 2001 detailed in Professor Rodman's declaration attached to the

22    first amended complaint. While these comments were alleged to have been made roughly nine-

23    to-ten years prior to the date plaintiff initiated this lawsuit, plaintiff also alleges that he did not

24    learn about these statements until January 24, 2009, when he read Professor Rodman's

---

25    [5] Under California law, an extension of a statute of limitations will not apply to claims already

26    barred under the prior statute of limitations unless the State Legislature explicitly provides
otherwise. <u>See</u> <u>Maldonado</u>, 370 F.3d at 955. There exist no explicit provisions permitting

27    retroactive application of the extension to the statute of limitations for personal injury actions
except for causes of action stemming from the attacks on September 11, 2001. <u>See</u> Cal. Civ.

28    Proc. § 335.1.

9

declaration dated January 10, 2009.  (ECF No. 72 at 4.)[6]  However, plaintiff makes no such

allegations regarding delayed discovery with regard to any of the other conduct alleged in the first

amended complaint.  The alleged dates that correspond to that other conduct show that such

conduct fell well outside of the one-to-two year limitations periods for plaintiff's claims asserted

in the first amended complaint.  Accordingly, the court recommends that plaintiff's claims be

dismissed with prejudice insofar as they are based on alleged conduct outside of the statements

plaintiff allegedly first obtained knowledge of on January 24, 2009.

### 2.     State Law Defamation Claims Against Jones and Oakley

Under California law, "[t]he elements of a defamation claim are (1) a publication that is

(2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes

special damage."  Wong v. Tai Jing, 189 Cal. App. 4th 1354 (Ct. App. 2010) (citing (Taus v.

Loftus, 40 Cal.4th 683, 720 (2007)).  California Civil Code § 44 defines "defamation" as either

libel or slander.  California Civil Code § 46 defines slander as:

> [A] false and unprivileged publication, orally uttered, and also communications by
> radio or any mechanical or other means which:
>
> 1. Charges any person with crime, or with having been indicted, convicted, or
> punished for crime;
>
> 2. Imputes in him the present existence of an infectious, contagious, or loathsome
> disease;
>
> 3. Tends directly to injure him in respect to his office, profession, trade or
> business, either by imputing to him general disqualification in those respects
> which the office or other occupation peculiarly requires, or by imputing something
> with reference to his office, profession, trade, or business that has a natural
> tendency to lessen its profits;
>
> 4. Imputes to him impotence or a want of chastity; or
>
> 5. Which, by natural consequence, causes actual damage.

---

[6] Specifically, plaintiff alleges the following in his first amended complaint:  "On January 24,
2009, Plaintiff Zochlinski was informed of the slanders made by Oakley and Jones against his
person.  This information was provided by Prof. Peter Rodman in a declaration made in another
legal case [attached as exhibit A]."  (ECF No. 72 at 4.)

1    "A slander that falls within the first four subdivisions of Civil Code section 46 is slander per se

2    and require[s] no proof of actual damages." Regalia v. Nethercutt Collection, 172 Cal. App. 4th

3    361, 367 (Ct. App. 2009); see also Crowe v. Cnty. of San Diego, 608 F.3d 406, 442 (9th Cir.

4    2010) ("If a statement falls within § 46(1)-(4), it is considered defamatory per se.").

5         A claim for slander per se requires a showing that the defendant made a factual assertion,

6    as opposed to an opinion, that was false.  Baker v. Los Angeles Herald Exam'r, 42 Cal. 3d 254,

7    259-60 (1986).  "'[A] false assertion of fact could be libelous even though couched in terms of

8    opinion.'"  Rodriguez v. Panayiotou, 314 F.3d 979, 985 (9th Cir. 2002) (quoting Moyer v.

9    Amador Valley Joint Union High Sch. Dist., 225 Cal. App. 3d 720, 723 (Ct. App. 1990));

10   Milkovich v. Lorain Journal Co., 497 U.S. 1, 19-20 (1990) ("Even if the speaker states the facts

11   upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his

12   assessment of them is erroneous, the statement may still imply a false assertion of fact.").  The

13   question of whether a statement constitutes an actionable factual assertion is a question of law for

14   the court to decide.  Franklin v. Dynamic Details, Inc., 116 Cal. App. 4th 375, 385 (Ct. App.

15   2004).  "In making such a determination, the court must place itself in the position of the hearer

16   or reader, and determine the sense or meaning of the statement according to its natural and

17   popular construction."  Baker, 42 Cal. 3d at 260.

18        To aid in determining whether an allegedly defamatory statement is actionable fact or

19   nonactionable opinion, California's courts employ a "totality of the circumstances" test.  Id.  This

20   test requires the court to consider the allegedly defamatory statement under the following

21   analytical framework:

22        First, the language of the statement is examined.  For words to be defamatory, they
         must be understood in a defamatory sense.  Where the language of the statement is
23        cautiously phrased in terms of apparency, the statement is less likely to be
24        reasonably understood as a statement of fact rather than opinion.

25        Next, the context in which the statement was made must be considered . . . [and]
         the facts surrounding the publication must also be carefully considered.
26

27        This contextual analysis demands that the courts look at the nature and full content
         of the communication and to the knowledge and understanding of the audience to
28        whom the publication was directed. [T]he publication in question must be

                                                    11

considered in its entirety; [i]t may not be divided into segments and each portion treated as a separate unit. It must be read as a whole in order to understand its import and the effect which it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning which may have been fairly presumed to have been conveyed to those who read it.

Id. at 260-61 (internal quotations and citations omitted).

In addition, courts consider "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995). Generally, statements are more likely to be considered opinions when they contain "loose, figurative, or hyperbolic language which would negate the impression" that a speaker was seriously maintaining that a person committed a crime. Milkovich, 497 U.S. at 21.

a.    *Oakley*

Plaintiff alleges in the first amended complaint that Oakley's statements to Professor Rodman, i.e., that Rodman should not become involved with plaintiff, that Rodman would be putting himself and his family in danger if he continued to associate with plaintiff, and that he equated his impression of plaintiff with his impression of Charles Manson, constituted slander per se because they implied that plaintiff had a mental disease and was a dangerous criminal mastermind who had committed the crimes for which he had been charged but managed to avoid conviction. (ECF No. 72 at 7.) Defendants argue that plaintiff's defamation claim against Oakley should be dismissed because Oakley's statements constituted nothing more than Oakley's opinion, meaning they could not form the basis of a defamation claim. The court finds defendants' argument meritorious.

Under California's "totality of the circumstances" test, the court first looks to the language of Oakley's alleged statements. It is clear from the plain language of plaintiff's allegations that Oakley's statements to Professor Rodman were nothing more than expressions of Oakley's own opinion of plaintiff. Professor Rodman's declaration attached to the first amended complaint states that Oakley *advised* him not to get involved with plaintiff because such action could put him and his family in danger (ECF No. 72 at 28), which shows that Oakley was merely

12

1   recommending or suggesting that Rodman not associate with plaintiff based on his belief that

2   plaintiff was dangerous.  Similarly, the declaration states that Oakley equated "his *impression* of

3   Mr. Zochlinski with his impression of Charles Manson" (id. (emphasis added)), therefore

4   clarifying that Oakley was only stating his opinion on the matter.

5          The context of the alleged conversation further indicates that Oakley's statements to

6   Rodman were nonactionable opinions.  The allegations make it clear that Professor Rodman had

7   approached Oakley specifically to obtain his impressions of plaintiff and advice "on whether to

8   pursue supporting [plaintiff] or not."  (Id.)  Furthermore, Rodman's declaration also notes that

9   Rodman considered Oakley's comments to be nothing more than an expression of his opinion of

10  plaintiff, rather than assertions of fact, because it states that Rodman disagreed with Oakley's

11  description of plaintiff's character.  (Id.)

12         After considering the totality of the circumstances, it is clear that Oakley's alleged

13  statements to Professor Rodman were nothing more than nonactionable opinions.  See Crowe,

14  608 F.3d at 444 (holding that defendant's comparison of plaintiff to Charles Manson could not

15  support plaintiff's defamation claim because "the statement is 'the type of colorful, figurative

16  rhetoric that reasonable minds would not take to be factual'" and the context in which the

17  statement was made did not reasonably infer that defendant was asserting that plaintiff had

18  committed a particular crime).  Consequently, the allegations of the first amended complaint fail

19  to establish an actionable claim for defamation against Oakley under California state law.[7]

20                        b.     *Jones*

21         With regard to Jones, the first amended complaint alleges that Jones approached the editor

22  of the *California Aggie* newspaper and described plaintiff "as a dangerous man," which

23  convinced the editor to not run a story about plaintiff in the paper.  (ECF No. 72 at 6, 31.)

24  ─────────────────

25  [7] The first amended complaint also alleges that plaintiff "believes" Oakley later made statements
    "similar" to those he made to Rodman to several other member of the U.C. Davis community,
26  including members of the student senate and U.C. Davis administration, but does not specify the
    exact contents of those alleged statements.  (ECF No. 72 at 6.)  Not only are these additional
27  alleged statements not sufficiently plead under the standards of Federal Rule of Civil Procedure 8;
    if they were indeed "similar" to Oakley's statements allegedly uttered to Rodman, then they
28  would have also constituted statements of nonactionable opinion.

1    Plaintiff further alleges that "Jones had also claimed, falsely, that [plaintiff] had been convicted of

2    charges made against him in 1972, thus imputing [plaintiff] had been convicted of serious

3    charges, including felonies, in the past when no such convictions had occurred." (Id.at 6.)

4    Defendants contend that plaintiff's defamation claim against Jones should be dismissed because

5    Jones's statements were privileged under the "fair comment" doctrine and were nonactionable

6    opinions.  Defendants also argue that the first amended complaint's allegations fail to state a

7    prima facie case for defamation because they do not demonstrate special damages and are

8    generally conclusory in nature.

9        The court finds defendants' assertion that Jones's statements were privileged under the

10   "fair comment" doctrine to lack merit.  The doctrine of "fair comment" is a common law right,

11   "long recognized in California, which protect[s] expressions of opinion about public officials,

12   scientists, artists, composers, performers, authors, and other persons who place themselves or

13   their work in the public eye."  Edwards v. Hall, 234 Cal. App. 3d 886, 908 (Ct. App. 1991)

14   (quoting Brown v. Kelly Broad. Co., 48 Cal. 3d 711, 732 (1989)) (internal quotations omitted);

15   see also Williams v. Daily Review, Inc., 236 Cal. App. 2d 405, 416 (Ct. App. 1965).  "In

16   California, the cases have extended the fair comment privilege so that, where malice is disproved,

17   the privilege applies not only to comment (opinions) but to false statements of fact as well."

18   Edwards, 234 Cal. App. 3d at 909 (internal quotations omitted).  "The protection which the law

19   affords to those who would comment or criticize extends only to comment which is 'fair,' not in

20   the sense that it must be reasonable or moderate, but in the sense that it must be published 'in part

21   at least, for the bona fide purpose of giving the public the benefit of comment which it is entitled

22   to have, rather than for any ulterior motive of causing harm to the plaintiff.'"  Maidman v. Jewish

23   Publications, Inc., 54 Cal. 2d 643, 652 (1960), disapproved of on other grounds by Brown, 48

24   Cal. 3d 711.  Furthermore, the California Supreme Court has clarified that right of fair comment

25   generally applies only to comments made regarding matters of public interest concerning "the

26   official conduct of public officials" or public figures.[8]  Brown, 48 Cal. 3d at 732.  It is "not a

27   _____

28   [8] In Brown, the California Supreme Court noted that its prior case law regarding the application
     of the fair comment doctrine to comments regarding public "officials" who did not hold

                                                    14

1    privilege as to every person or subject in which there might be some public interest." Id.

2          Defendants contend that Jones's alleged statements fall within this privilege because they

3    were made to the editor of a campus newspaper about plaintiff, who is an individual of renown

4    within the U.C. Davis campus community.  However, none of the allegations within the first

5    amended complaint indicate that plaintiff is a public figure, or that Jones was commenting on

6    plaintiff's actions that were of public interest.  Moreover, the allegations of the first amended

7    complaint indicate that Jones approached the editor of the *California Aggie* for the purpose of

8    preventing the publication of the article about plaintiff, not to provide further comment regarding

9    plaintiff for the public's benefit.  (See ECF No. 72 at 9, 31 (alleging that Jones arrived at the

10   *California Aggie* offices without an appointment, used his own keys to gain entry without

11   announcing his presence, and intimidated the editor with his description of plaintiff that directly

12   caused the editor to not publish the article on plaintiff).)

13         The court also finds defendants' argument that Jones's alleged statements are

14   nonactionable opinions to be without merit.  With regard to Jones's alleged statement to the editor

15   of the *California Aggie* that plaintiff was a "dangerous man," the alleged context in which this

16   statement was made reasonably indicates that it was an assertion of fact for purposes of a

17   defamation claim.  Jones, a U.C. Davis campus police officer, allegedly confronted the

18   newspaper's editor and told him that plaintiff was "a dangerous man," which intimidated the

19   editor into not running a story on plaintiff.  (ECF No. 72 at 30-31.)  Furthermore, his allegedly

20   false statement that plaintiff had been convicted of charges in 1972 is a clear factual assertion

21   capable of verification; either plaintiff had been convicted of the charges, or he had not.[9]

22   _____

     governmental office would likely now be analyzed under the United States Supreme Court's

23   later-established standards regarding public figures.  48 Cal. 3d at 732, n.19.

24   [9] While the first amended complaint alleges that Jones also stated that plaintiff had been
     convicted of charges in 1972, it fails to indicate that this second alleged statement was made to

25   the editor of the *California Aggie* at the same time Jones allegedly described plaintiff as "a
     dangerous man."  Furthermore, Professor Rodman's declaration, from which plaintiff allegedly

26   discovered the statement made to the editor, contains no reference to Jones's alleged statement
     regarding plaintiff having been convicted of charges.  Accordingly, the court construes these

27   allegations to mean that Jones made two separate allegedly defamatory statements: one statement

28   to the editor of the *California Aggie* in 2001 when he described plaintiff as "a dangerous man,"

15

1    Jones's alleged statement that plaintiff had been convicted of charges in 1972 also gives

2    rise to a claim for slander per se, meaning that plaintiff does not need to allege the existence of

3    actual damages stemming from this alleged statement in order to state a cognizable claim for

4    defamation under California state law.  Cal. Civ. Code § 46(1).  Therefore, defendants' argument

5    that plaintiff fails to state a defamation claim against Jones because he fails to allege actual

6    damages stemming from Jones's statements is not well taken.

7    Nevertheless, the court finds that plaintiff's defamation claim against Jones should be

8    dismissed because plaintiff's allegations fail to plausibly allege such a claim.  First, plaintiff fails

9    to plausibly allege actual damages with respect to Jones's alleged statement that plaintiff was "a

10   dangerous man."  This statement cannot constitute defamation per se under California Civil Code

11   § 46 because, standing alone, it does not charge plaintiff with a crime, imply that plaintiff had a

12   loathsome mental disease, or fall into any of the other two categories of slander per se covered

13   under that statute.  See Crowe, 608 F.3d at 444 (holding that statements that plaintiff was

14   "exhibiting sociopathic tendencies" and being "highly manipulative and controlling" cannot

15   constitute defamation per se under California Civil Code § 46(1) because they do not charge

16   [plaintiff] with a crime").  Therefore, plaintiff must allege actual damage to maintain a

17   defamation claim based on this statement.  See id.  While plaintiff alleges that he suffered actual

18   damages by not having an article published about him in the *California Aggie* newspaper (ECF

19   No. 72 at 9), Professor Rodman's declaration attached to the first amended complaint states that

20   the exact same "article was eventually printed in *The Sacramento News and Review*" (id. at 31).

21   Consequently, plaintiff cannot plausibly allege that he suffered injury by not having the article

22   published about him as a result of Jones's statement.  See Paulsen, 559 F.3d at 1071 ("[The court

23   is] not . . . required to accept as true conclusory allegations that are contradicted by documents

24   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

25   conclusions merely because they are cast in the form of factual allegations.").  Nor can plaintiff

26

27   and a second statement that plaintiff had been convicted of charges in 1972 to an unspecified
     audience at an unspecified time separate from Jones's meeting with the editor of the *California*
28   *Aggie*.

1   believably allege any of the other items of special damages he claims in the first amended

2   complaint (ECF No. 72 at 8) because he alleges no facts creating a plausible causal connection

3   between those alleged injuries and Jones's statement to the editor of the *California Aggie*.

4          Furthermore, Professor Rodman's declaration attached to the first amended complaint

5   renders it implausible that plaintiff's defamation claim against Jones based on the allegation that

6   Jones falsely stated that plaintiff had been convicted of charges in 1972 accrued within the

7   relevant statute of limitations period.  Plaintiff alleges that he first became aware of Jones's

8   alleged slander on January 24, 2009, after reading Rodman's attached declaration.  (ECF No. 72

9   at 4.)  However, the declaration states only that Jones told the editor that plaintiff was "a

10  dangerous man."  (Id. at 30-31.)  Rodman's declaration does not state that Jones told the editor

11  that plaintiff had been convicted of charges in 1972, or at any other time.  (See id.)  Nor does it

12  state that Jones had made such a statement to any other person.  Accordingly, the first amended

13  complaint gives rise to serious uncertainties as to how plaintiff was able to ascertain from

14  Rodman's declaration that Jones falsely claimed to the editor that plaintiff had been convicted of

15  charges in 1972.[10]  See Paulsen, 559 F.3d at 1071.  Such details are critical to the viability of

16  plaintiff's defamation claim against Jones because if plaintiff first learned of this additional

17  statement even just several days prior to the date he allegedly read Professor Rodman's

18  declaration, his defamation claim against Jones would be barred by the applicable one-year

19  statute of limitations.  See Cal. Civ. Code § 340(c).

20         Because plaintiff does not plausibly allege when he first became aware that Jones falsely

21  stated that plaintiff had been convicted of charges in 1972, his defamation claim against Jones

22  based on that statement should be dismissed.  More importantly, this claim should be dismissed

23  with prejudice because the court is now certain that plaintiff cannot in good faith amend his

24  complaint to allege facts demontrating he first knew of Jones's alleged statement that plaintiff had

---

26  [10] The court further notes the conclusory nature of plaintiff's allegation that Jones had falsely
    accused him of having been convicted of charges in 1972.  It alleges only that Jones falsely
27  claimed plaintiff had been convicted of "charges" without specifying which crime or crimes Jones
    claimed he had been convicted of, who was Jones's audience, or even what Jones actually said.
28  (See ECF No 72 at 6.)

1   been convicted of charges within the applicable one-year statute of limitations period.  During the

2   hearing on this matter, plaintiff stated on the record that he first learned of Jones's allegedly false

3   statement that plaintiff had been convicted of charges in 1972 sometime in February 2001 when

4   speaking with Teresa Lee from the *California Aggie* for a story she was writing about him.[11]

5   Specifically, plaintiff stated that Lee told him sometime in February 2001 that Jones had told her

6   that plaintiff had been convicted of charges in 1972 when she had interviewed him for a

7   newspaper article she had been writing about him at that time.  Based on this statement, plaintiff

8   cannot plausibly allege that his defamation claim against Jones accrued within the one-year

9   statute of limitations period insofar as it is premised on Jones's alleged statement that plaintiff

10  had been convicted of charges in 1972.  Furthermore, as stated above, Jones's other alleged

11  statement, that plaintiff was "a dangerous man," cannot, by itself, sustain a defamation claim

12  against Jones because plaintiff fails to plausibly allege that he suffered actual damages as a result

13  of that statement.  Therefore, the court recommends that plaintiff's defamation claim against

14  Jones be dismissed with prejudice as further amendment would be futile.

15              3.    Section 1983 "Defamation-Plus" Claims[12]

16       Plaintiff also asserts a "defamation-plus" claim under 42 U.S.C. § 1983 against defendants

17  Jones and Oakley based on their alleged comments that form the factual basis of plaintiff's state

18  law defamation claims against those defendants.

19       In order to allege a cognizable defamation-plus claim, the allegations must first establish

20  the existence of a defamatory statement.  See Crowe, 608 F.3d at 445 (upholding dismissal of

21  [11] While the court may not consider allegations made outside of the complaint for purposes of
22  considering the propriety of a Rule 12(b)(6) motion, it may consider such extrinsic allegations
    when determining whether dismissal should be with or without prejudice.  See Broam, 320 F.3d
23  at 1026 n.2; Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137-38 (9th Cir.
    2001).
24
25  [12] The plaintiff alleges that his claims under Section 1983 against Jones and Oakley are asserted
    against these defendants in both their individual and official capacities.  (ECF No. 72 at 15, 17.)
26  However, the Ninth Circuit Court of Appeals affirmed the court's dismissal of these claims with
    prejudice insofar as they were asserted against these defendants in their official capacities.  (ECF
27  No. 62 at 2.)  Accordingly, the first amended complaint's Section 1983 claims against Jones and
    Oakley should be summarily dismissed insofar as they are asserted against these defendants in
28  their official capacities.

defamation-plus claim because the defendant's statements were not defamatory as a matter of California state law). In addition, "[a] § 1983 'defamation-plus' claim requires an allegation of injury to a plaintiff's reputation from defamation accompanied by an allegation of injury to a recognizable property or liberty interest." Id. at 444. "There are two ways to state a cognizable § 1983 claim for defamation-plus: (1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury to reputation caused the denial of a federally protected right." Herb Hallman Chevrolet v. Nash–Holmes, 169 F.3d 636, 645 (9th Cir. 1999). There must also be some temporal connection between the unconstitutional actions and the defamatory statements. Campanelli v. Bockrath, 100 F.3d 1476, 1483 (9th Cir. 1996).

As discussed above, the alleged statements plaintiff attributes to Oakley were not defamatory as a matter of law because they were nonactionable opinions. Similarly, the first amended complaint fails to sustain a plausible defamation claim against Jones, therefore making plaintiff's defamation-plus claim against this defendant equally deficient. Because the allegations of the first amended complaint cannot sustain defamation claims against these defendants under California law, plaintiff's defamation-plus claim against these defendants should also be dismissed with prejudice. See Crowe, 608 F.3d at 445.

4.   42 U.S.C. § 1981 Claims[13]

Under 42 U.S.C. §1981, all persons "shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." To state a claim under Section 1981, "a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race . . . ; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and

---

[13] Similar to his Section 1983 claims, plaintiff alleges his claims under Section 1981 against Jones and Oakley in both their individual and official capacities. (ECF No. 72 at 15, 17.) The Ninth Circuit Court of Appeals also affirmed the court's dismissal of these claims with prejudice to the extent they were asserted against these defendants in their official capacities. (ECF No. 62 at 2.) Accordingly, the first amended complaint's Section 1981 claims against Jones and Oakley should be summarily dismissed insofar as they are asserted against these defendants in their official capacities.

1  enforce contracts, sue and be sued, give evidence, etc.).”  Peterson v. State of California Dept. of

2  Corrections and Rehabilitation, 451 F. Supp. 2d 1092, 1101 (E.D. Cal. 2006).  The United States

3  Supreme Court has noted that Section 1981 is not “a general proscription of racial discrimination

4  . . . it expressly prohibits discrimination only in the making and enforcement of contracts.”

5  Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989); see also Runyon v. McCrary, 427

6  U.S. 160, 172 (1976) (“[Section] 1981 relates primarily to racial discrimination in the making and

7  enforcement of contracts.” (internal quotations omitted)).  Consequently, “a plaintiff cannot state

8  a claim under § 1981 unless he has (or would have) rights under [an] existing (or proposed)

9  contract that he wishes to make and enforce.”  Domino’s Pizza, Inc. v. McDonald, 546 U.S. 470,

10  479-80 (2006).  Furthermore, similar to a violation of equal protection, to prevail on this claim, [a

11  plaintiff must “prove as an element of the cause of action some racial, or perhaps otherwise class-

12  based, invidiously discriminatory animus behind the [official’s] action.”  Dennis v. Thurman, 959

13  F. Supp. 1253 (C.D. Cal. 1997) (internal punctuation and citations omitted).

14             a.  *Jones*

15       Defendants assert that the first amended complaint fails to establish a prima facie case

16  under Section 1981 against Jones because the complaint’s allegations fail to show that Jones’s

17  statements discriminated against plaintiff’s right to make or enforce a contract, or engage in any

18  of the other protected activities enumerated under Section 1981.  This argument is persuasive.

19       Based on a liberal construction of the first amended complaint’s factual allegations

20  regarding plaintiff’s Section 1981 claim,[14] it appears that plaintiff alleges that Jones’s comments

21  prevented the publication of an article about plaintiff in the *California Aggie*, which “denied

22  Plaintiff the opportunity to be heard in a public forum within the community where the

23  publication of information on Plaintiff would be most beneficial to his interests, i.e. readmission

24  to the University of California and clearing his name with the community.”  (ECF No. 72 at 16.)

25  However, this allegation in no way shows how Jones’s statements interfered with plaintiff’s

26

27  ───────────────
[14] Confusingly, the first amended complaint combines plaintiff’s factual allegations concerning
his Section 1983 defamation-plus and Section 1981 claims against Jones into a single section

28  without clear delineation.

1   contract rights or any other rights enumerated in Section 1981.  Plaintiff does not allege that he

2   had a contract with the *California Aggie* to have the article about him published, nor does he

3   allege that Jones's conduct prevented him exercising his rights pursuant to an existing or

4   proposed contract of any kind.  See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75

5   (2d Cir. 2000) ("[A] plaintiff must demonstrate some affirmative link to causally connect the

6   actor with the discriminatory action." (internal quotations omitted)).  Similarly, the first amended

7   complaint contains no allegations indicating that Jones hindered plaintiff's enjoyment of the other

8   rights enumerated in Section 1981.  Accordingly, even taking plaintiff's allegations that Jones

9   made his statements with the intent to discriminate against plaintiff on the basis of his Jewish

10   descent as true, the first amended complaint fails to establish that this discrimination interfered

11   with plaintiff's rights to make and enforce contracts, to sue, be a party, give evidence, and to the

12   full and equal benefit of all laws.  Therefore, it is recommended that plaintiff's Section 1981

13   claim against Jones be denied with prejudice.

14                                          b.      *Oakley*

15          The court notes that the first amended complaint also appears to allege a Section 1981

16   claim against Oakley.  (ECF No. 72 at 10-15.)  However, the Ninth Circuit Court of Appeals

17   reversed and remanded the court's dismissal of plaintiff's Section 1981 claim only with respect to

18   Jones.  (ECF No. 62 ("The district court erred in dismissing Zochlinski's § 1981 equal protection

19   claim against defendant John Jones . . . because Zochlinski alleged that defendant Jones acted

20   with racial animus against people of Jewish descent.").  In adherence with the Court of Appeals'

21   mandate, the court permitted plaintiff to continue this action with his Section 1981 claim against

22   Jones only, and twice cautioned plaintiff that if he decided to amend his complaint, he could

23   assert only his claims from the original complaint that were remanded by the Court of Appeals.

24   (ECF Nos. 66, 68.)  The court further cautioned that any claims plaintiff asserted in the first

25   amended complaint that had not been remanded would be summarily dismissed.  (Id.)  Because

26   plaintiff's Section 1981 claim against Oakley was not one of the claims remanded by the Court of

27   Appeals, the court recommends that it be summarily dismissed with prejudice.

28   ////

1                          5.       Intentional Infliction of Emotional Distress Claims

2              The elements of a claim for IIED are as follows:  "(1) extreme and outrageous conduct by

3      the defendant with the intention of causing, or reckless disregard of the probability of causing,

4      emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

5      actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

6      Ess v. Eskaton Props., Inc., 97 Cal.App.4th 120, 129 (2002) (quoting Cervantez v. J.C. Penney

7      Co., 24 Cal.3d 579, 593, 156 (1979)).  Outrageous conduct must be "so extreme as to exceed all

8      bounds of that usually tolerated in a civilized community."  Potter v. Firestone Tire & Rubber

9      Co., 6 Cal.4th 965, 1001 (1993).  Emotional distress is "severe" when it is "of such substantial

10     quantity or enduring quality that no reasonable man in a civilized society should be expected to

11     endure it."  Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970).  The defendant's

12     conduct must have been intended to inflict injury or be done with the realization that injury will

13     result.  Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991).  Moreover, the defendant's

14     conduct must have been "directed at the plaintiff, or occur in the presence of a plaintiff of whom

15     the defendant is aware."  Id.  Similarly, if the defendant had another stated purpose for his or her

16     behavior, the other, lawful purpose may preclude a finding of intent to inflict distress.  See

17     Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982).  The California Supreme Court has

18     further explained:

19              "The law limits claims of intentional infliction of emotional distress to egregious
                conduct toward plaintiff proximately caused by defendant." . . . The only
20              exception to this rule is that recognized when the defendant is aware, but acts with
                reckless disregard, of the plaintiff and the probability that his or her conduct will
21              cause severe emotional distress to that plaintiff. . . . Where reckless disregard of
                the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the
22              time the outrageous conduct occurs is recognized as the element establishing a
                higher degree of culpability which, in turn, justifies recovery of greater damages
23              by a broader group of plaintiffs than allowed on a negligent infliction of emotional
                distress theory. . . .
24
25

26     Christensen, 54 Cal. 3d at 905-06 (citations omitted).

27     ////

28     ////

                                                    22

a.      *Oakley*

With regard to Oakley, the allegations of the first amended complaint demonstrate that he did not have the requisite intent when making his statements to Professor Rodman to support an IIED claim against him.  Specifically, plaintiff alleges that Oakley made his statements regarding plaintiff to Rodman because he "was sincerely concerned for [Rodman's safety]" (ECF No. 72 at 5, 28), therefore demonstrating that Oakley had a separate, lawful purpose for making those statements.  See Davidson, 32 Cal. 3d at 209.  Furthermore, the alleged fact that plaintiff did not become aware of Oakley's statements until he read about them in a third party's declaration roughly nine years after they were allegedly uttered, further indicates that Oakley did not make his statements either with the intent to cause plaintiff severe emotional distress or with the realization that injury would result.  See Christensen, 54 Cal. 3d at 903. Based on the allegations of the first amended complaint, plaintiff fails to plausibly allege that Oakley's statements were directed at plaintiff or were made with the intent to cause plaintiff harm.  Moreover, Oakley's alleged conduct, responding to Professor Rodman's inquiries regarding plaintiff's character with statements of his opinion of plaintiff, was undoubtedly not "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Potter, 6 Cal. 4th at 1001.  Accordingly, plaintiff's allegations fail to assert a cognizable IIED claim against Oakley.

Given the non-extreme nature of Oakley's alleged conduct and the alleged facts regarding the reason why Oakley made his statements, the court finds that plaintiff would be unable to make good faith amendments to his allegations that would state a cognizable IIED claim against Oakley.  Therefore, the court recommends that plaintiff's IIED claim against Oakley be dismissed with prejudice.

b.      *Jones*

Similar to his allegations against Oakley, plaintiff's allegations in the first amended complaint against Jones fail to demonstrate that Jones's statements to the editor of the *California Aggie* were made with the intent to cause plaintiff severe emotional distress.  Indeed, plaintiff alleges that Jones made his statements "in order to prevent publication of an article in a UC campus newspaper that would embarrass both Jones and his employer, the Regents of the

University of California." (ECF No. 72 at 9.)  Such an allegation suggests that Jones made the alleged statements for a purpose other than causing injury, i.e., to prevent the dissemination of information embarrassing to Jones and his employer.  Plaintiff also alleges that he did not become aware of Jones's statements until January 24, 2009, roughly eight years after Jones allegedly made the statements, only after reading a third party's declaration.  (ECF No. 27 at 4, 30.)  This alleged temporal distance between Jones's statements and the means by which plaintiff became aware of them further demonstrates that Jones lacked the requisite intent for an IIED claim.  Given these allegations, the court finds that plaintiff cannot plausibly assert that Jones intended his statements to cause plaintiff to suffer emotional distress.[15]  Moreover, while Jones's alleged conduct appears more extreme than that alleged of Oakley, it still does not arise to the high standard required to state an IIED claim against him.  See Potter, 6 Cal. 4th at 1001.  Therefore, the court recommends that plaintiff's IIED claim against Jones be dismissed with prejudice.

6.    Claims under the Unruh Civil Rights Act Against Jones and Oakley

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  The California Supreme Court has concluded that "a plaintiff seeking to establish a cause of action under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." Harris v. Capital Growth Investors XIV, 52 Cal.3d 1142, 1175 (1991).  Because the first amended complaint contains no allegations indicating that the alleged conduct attributable to Jones or Oakley prevented plaintiff from accessing the U.C. Davis campus or otherwise denied plaintiff equal access to other accommodations, advantages, facilities, privileges, or services, plaintiff's claims against these defendants under the Unruh Act should be

---

[15] In addition, the allegations fail to establish intent for purposes of plaintiff's IIED claims against Jones or Oakley on the theory that these defendants acted with reckless disregard of plaintiff's interests because they demonstrate that plaintiff was not present when these defendant's uttered their allegedly injurious statements. See Christensen, 54 Cal. 3d at 905-06.

1   dismissed with prejudice.

2                    7.      Claims Against the Regents of the University of California

3          Plaintiff appears to assert claims against the Regents of the University of Califonia under

4   Section 1981 and Section 1983 despite the fact that the Ninth Circuit Court of Appeals upheld the

5   court's earlier dismissal of those claims against this defendant.  (ECF No. 62.)  Accordingly, any

6   federal claims against this defendant asserted in the first amended complaint should be dismissed

7   with prejudice.  Furthermore, because the first amended complaint fails to make any allegations

8   against the Regents of the University of California as an institution with regard to plaintiff's state

9   law claims for defamation, IIED, or violations of the Unruh Civil Rights act, such claims against

10  this defendant should also be denied with prejudice.

11         Furthermore, it appears that plaintiff attempts to allege claims against the Regents in their

12  individual capacities by naming them as "Doe" defendants, despite the fact that plaintiff only

13  named them as an institution in his original complaint.  (ECF No. 72 at 3.)  The court previously

14  admonished plaintiff that he could only assert the claims from the original complaint that the

15  Ninth Circuit Court of Appeals remanded for further proceedings if he decided to amend his

16  complaint.  (ECF Nos. 66, 68.)  Notwithstanding the issue of plaintiff's attempt to now name

17  these new parties as "Doe" defendants in this nearly six-year old action, any claims in the first

18  amended complaint directed at these parties should be summarily dismissed on the basis that

19  plaintiff was not granted leave to add them as defendants to the first amended complaint.

20                    8.      Other Claims

21         The court cautioned plaintiff in its prior order granting him the option to amend his

22  complaint that, if he chose to file a first amended complaint, he could only assert the claims from

23  the original complaint that the Ninth Circuit Court of Appeals remanded to this court for further

24  proceedings.  (ECF No. 66.)  It appears that plaintiff attempts to re-allege claims under 42 U.S.C.

25  §§ 2000, *et seq.* and California's Ralph and Tom Banes Civil Rights Acts even though the Ninth

26  Circuit Court of Appeals did not remand those claims and this court directed plaintiff to only

27  assert his remanded claims if he chose to amend his complaint.  (ECF Nos. 62, 66, 68.)

28  Accordingly, plaintiff's first amended complaint should be dismissed insofar as it seeks to either

1    revive claims from the original complaint that were dismissed with prejudice and affirmed on

2    appeal or add new claims that were not previously asserted in the original complaint.

3    IV.    Plaintiff's Request for Leave to Amend

4          The court acknowledges plaintiff's request in his opposition to defendants' motion to

5    dismiss that he be granted leave to amend his first amended complaint, but finds that granting

6    plaintiff a further opportunity to amend is not warranted.  Plaintiff "freely admits that [the first

7    amended complaint] was poorly composed," but asserts that the facts alleged therein would give

8    rise to cognizable claims against defendants if they were better alleged.  (ECF No. 80 at 18.)

9    However, as discussed above, plaintiff's allegations not only fail to support the required elements

10   of plaintiff's causes of action, but also demonstrate that plaintiff's claims either could not have

11   accrued within the applicable limitations periods, or could not support a cognizable claim even if

12   they were clarified through further amendment.

13         Furthermore, the court is also mindful of plaintiff's litigation history concerning the

14   events alleged in the first amended complaint, which includes numerous other actions filed within

15   this district alone.  Through those prior actions, plaintiff had multiple opportunities to properly

16   amend his complaints and to abide by the court's orders, but failed to do so.  See, e.g., Zochlinski

17   v. The Regents of the University of California, No. 2:09-cv-0185, ECF No. 39 at 1-5 (detailing

18   part of plaintiff's litigation history in this district).  Accordingly, the court recommends that the

19   first amended complaint be dismissed with prejudice.  See Moore v. Kayport Package Exp., Inc.,

20   885 F.2d 531, 538 (9th Cir. 1989) (citing Foman v. Davis, 371 U.S. 178, 182 (1962) ("In deciding

21   whether justice requires granting leave to amend, factors to be considered include the presence or

22   absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by

23   previous amendments, undue prejudice to the opposing party and futility of the proposed

24   amendment."); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

25   V.    Plaintiff's Request for Appointment of Pro Bono Counsel

26         In his opposition to defendants' motion to dismiss, plaintiff once again requests that he be

27   appointed pro bono counsel to assist him in this litigation.  (ECF No. 80 at 18.)  The court has

28   already twice considered and denied such a request by plaintiff.  (ECF Nos. 31 at 15; 68 at 2-3.)

26

As noted in those previous orders, there is no constitutional right to counsel in a civil case and while the court has discretion to appoint counsel for indigent persons, i.e., someone proceeding *in forma pauperis*, it may only exercise this discretion upon a showing of "exceptional circumstances." Lassiter v. Dep't of Social Services, 452 U.S. 18, 25 (1981); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).  Here, plaintiff is not proceeding *in forma pauperis* and the court has previously determined on two prior occasions that plaintiff has not provided a basis on which to appoint counsel.  (ECF Nos. 31 at 15; 68 at 2-3.)  Plaintiff now asserts that his worsening health issues make appointment of pro bono counsel appropriate.  (ECF No. 80 at 18.) However, plaintiff fails to show that this new circumstance rises to the level of the "exceptional circumstances" required for such an appointment, which call for a showing that plaintiff will likely succeed on the merits and a showing that plaintiff is unable to adequately articulate his claims pro se due to the complexity of the legal issues involved.  See Mallard v. United States Dist. Court, 490 U.S. 296, 310 (1989).  Specifically, the allegations of the first amended complaint demonstrate that plaintiff cannot succeed in this action on the merits.  Accordingly, plaintiff's request for appointment of counsel is denied.

VI.     Jones's Purported Death

Both parties indicated that defendant Jones passed away in 2011 in their briefings and during the hearing regarding defendants' motion to dismiss.  (ECF Nos. 72 at 2; 81 at 10.) Federal Rule of Civil Procedure 25 provides, in part, that:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).  In order for the 90 day period to commence under Rule 25(a)(1), the statement of death must be more than a mere reference to the deceased party's death in a pleading or other filing and must conform to certain presentation requirements.  E.E.O.C. v. Timeless Investments, Inc., 734 F. Supp. 2d 1035, 1056 (E.D. Cal. 2010) (quoting Grandbouche v. Lovell, 913 F.2d 835, 836 (10th Cir. 1990) ("The 90 day time period is not triggered 'unless a formal

1   suggestion of death is made on the record, regardless of whether the parties have knowledge of a

2   party's death,' and the 'mere reference to a party's death in court proceedings or pleadings is not

3   sufficient.'"); Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994) (party must serve the nonparty

4   successors or representatives of the deceased with a suggestion of death in compliance with the

5   requirements set out in Rule 4 of the Federal Rules of Civil Procedure);  Colon v. Home Depot,

6   U.S.A., Inc., 22009 WL 4158783 (E.D. Cal. Nov. 18, 2009) (unpublished) (finding that the mere

7   reference to plaintiff's death in a joint status report filed with the court was insufficient to trigger

8   the 90 day period under Rule 25(a)(1)); Fed. R. Civ. P. 25(a)(3) (requiring a statement noting

9   death to be served on parties as provided in Rule 5 of the Federal Rules of Civil Procedure).

10  Therefore, the 90 day period in which plaintiff has to substitute Jones with an appropriate party

11  has not yet commenced.

12      Because the parties appear to agree that Jones is deceased, but no formal declaration of

13  death has been made in this action, the court directs defendants' counsel to file and serve a formal

14  statement of death for Jones along with a declaration detailing defendants' efforts to ascertain and

15  contact Jones's appropriate successor or representative for substitution purposes under Rule

16  25(a)(1) within 30 days of the date of this order.

17  VII.    Conclusion

18      Based on the foregoing, IT IS HEREBY ORDERED that:

19      1.      Plaintiff's motion to appoint counsel (ECF No. 80) is denied.

20      2.      Within 30 days of the date of this order, defendants shall file and serve on plaintiff

21  a formal statement of defendant John Jones, Jr.'s death.

22      Furthermore, IT IS HEREBY RECOMMENDED that:

23      1.      Defendants' motions to dismiss the first amended complaint (ECF No. 72) be

24  granted.

25      2.      This action be dismissed with prejudice.

26      3.      The Clerk of Court be directed to vacate all dates and close this case.

27  ////

28  ////

1      These findings and recommendations are submitted to the United States District Judge

2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served on all parties and filed with the court within fourteen (14) days after service of the

7  objections.  The parties are advised that failure to file objections within the specified time may

8  waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

9  Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

10      IT IS SO ORDERED AND RECOMMENDED.

11  Dated:  November 4, 2015

12

13                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28